## JOHN E. MEILY v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### Division One, December 23, 1908.

1. **DEMURRER TO EVIDENCE: Legal Effect.** A demurrer to the evidence admits as true all the facts which the evidence tends to prove, and all the reasonable deductions that may naturally be drawn therefrom, yet allowing to defendant to maintain that there is no legal liability resting upon him under the admitted facts.

2. ————: **Master and Servant: Sufficient Assistants.** It is as much the duty of the master to furnish a sufficient number of servants to perform the duties assigned to them in reasonable safety, as it is to furnish them a reasonably safe place in which to work.

3. ————: ————: **Loading Carwheels: Insufficient Assistants.** Where there is evidence that it required six men to run the 1600-pound carwheels up the skid and load them on the flat car, that only four men were assigned to the work, that the loading of carwheels was not plaintiff's usual work and that he had no practical experience in loading carwheels when assigned by defendant's foreman thereto, that when he and another co-employee were pushing the pair of wheels up the skid, to be seized with the hooks by two men on the car, they proved too heavy for them, and that when their strength became exhausted the wheels rolled down the skid and over plaintiff's leg, in spite of his care and caution, a demurrer to the evidence or a peremptory instruction to find for defendant should not be sustained.

4. **PEREMPTORY INSTRUCTION: Conflicting Evidence.** Where the evidence is conflicting an issue of fact is presented, and it should be left to the jury under proper instructions to be settled, and the court should not assume to declare as a matter of law that such fact is true or false.

5. ————: **Dangerous Way: Invited by Defendant: Obviously Dangerous.** As a rule a servant who chooses the dangerous way for performing the work to which he is assigned, when there is both a safe and a dangerous way, cannot recover for his injuries. But that rule has its qualifications. Where defendant provided a skid for loading the carwheels, which had a floor with cleats nailed thereon, for the express purpose of having its employees use it in loading the wheels, and plaintiff used that skid and was on its floor when his strength became exhausted and the wheels rolled back upon him, it does not

lie in defendant's mouth to say that plaintiff chose that dangerous way instead of walking along on the outside of the skid and pushing on the end of the journal which extended some six or eight inches beyond the outer edge of the wheels. That rule does not apply unless the doing of the work in the way provided for by the master was so obviously dangerous that a man of ordinary prudence and sense would not use it.

6. INSTRUCTION: Covering Whole Case: Including Defenses. An instruction for plaintiff designed to cover the whole case is not defective or erroneous for that it does not include the defense of assumption of risks, or the defense of contributory negligence. The plaintiff need neither plead nor prove that he was without fault, or that he did not assume the risks, for both contributory negligence and assumption of risks are affirmative defenses.

7. EXPERT TESTIMONY: Safe Way of Loading Carwheels. Where the matter under investigation was the proper and safe way of loading carwheels upon flat cars, it is not error to admit expert testimony as to the number of men required to load the wheels on the car. It is not a matter within the common knowledge of mankind.

8. ———: ———: Experienced Car Men: Floored Skid. Old and experienced railroad men, who have been either foremen or assistant foremen for various railroads, and have had personal experience in loading carwheels upon cars by the use of an open skid, are competent to testify as expert witnesses as to the number of men required to load carwheels upon a flat car by the use of a closed or floored skid, although they have not had experience in loading wheels by the use of a floored or closed skid, the testimony showing that the use of the floored skid made the work more difficult.

9. ———: Hypothetical Question: Omission of Facts. Where the evidence of the case shows the character of the mechanical appliances used, and that the witnesses are familiar with those appliances and that they knew from their own knowledge and experience the proper and safe way of operating them, a general question may be asked regarding the proper and safe way of operating them, the question assuming without so stating that the witness has the knowledge and experience which the evidence tends to show he possesses. So that where plaintiff was endeavoring to show that defendant was negligent in not furnishing more men to assist him in the work of loading carwheels upon a flat car, and the evidence shows the character of the cars upon which they were to be loaded, the size, shape and weight of the wheels, the general construction and length of the skids, and the witnesses who are testifying as experts have been shown to be experienced

railroad men and familiar with the way such loading was and should have been done and the number of men required to properly and safely do it, a hypothetical question, calling for an opinion as to the number of men needed, which leaves out of consideration the distance the wheels were rolled before they reached the skid, the absence of impeding cross pieces in the floored skids, the presence on the skid floor of cleats by which plaintiff and his helper could brace themselves, and the presence of two men on the car with hooks prepared to seize the axle of the wheels when they came within their reach, is not erroneous for the reason that it does not include these facts.

10. ————: **Probable Result: Speculative.**   Testimony of physicians to the effect that plaintiff's injuries would continue to grow worse and that the probabilities were that they would be permanent, does not relate to conjectural suffering, but is admissible as bearing on the question of damages.

11. **INSTRUCTION: Damages: "Accident in Question."**   An instruction which told the jury to compensate plaintiff for the injuries, etc., caused by the "accident in question," did not authorize them to go outside of the pleadings and evidence and award him damages for other injuries.

12. ————: **No Evidence: Refusal.**   An instruction for defendant telling the jury that plaintiff could not recover if he failed to do his part of the work in pushing the wheels up the skid to the car upon which he was endeavoring to load them, which wheels when he let go rolled down over him, was properly refused, where there was no evidence tending to show what his part of the work was or tending to show he was physically able to push the wheels further or hold them until they could be seized with hooks by the men on the car. No instruction should be given unless there is evidence upon which to base it.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

Affirmed.

*L. F. Parker, Cowherd & Ingraham* and *I. P. Dana* for appellant.

(1) Defendant's demurrer to the evidence should have been sustained at the close of plaintiff's case, and at the close of the whole case. (a) There is no evidence tending to show that defendant was negligent with reference to the number of men furnished to do

this work. Jackson v. Railroad, 104 Mo. 457. Neither plaintiff nor any of his witnesses testified that the loading of the wheels with two men on the car and two pushing the wheels was unusual or a departure from the usual and ordinary custom. They simply said that in their opinion there should have been six men. (b) The testimony of plaintiff's witnesses Mangan, Jones, and Richardson, as to their opinion of the requisite number of men to put the wheels into the car, was incompetent. Their testimony was the mere expression of an offhand opinion, not based upon the facts, and should not be considered as part of this case. (c) And with this testimony out of the case plaintiff's evidence utterly fails to show any negligence whatever on the part of this defendant, while from the whole record the showing is clear that defendant had no knowledge that the two men could not do this work safely with the cleated floored skid. Webb's Pollock on Torts, p. 11; Graney v. Railroad, 157 Mo. 683; Brew. Assn. v. Talbot, 141 Mo. 693; Rogers v. Prtg. Co., 103 Mo. App. 698; Hysell v. Swift & Co., 78 Mo. App. 47; Hubbell v. Yonkers, 104 N. Y. 434; Jogsen v. Hall, 53 Mich. 274; Nelson v. Railroad, 30 Minn. 74; Mfg. Co. v. McCormick, 118 Pa. St. 518; Holt v. Railroad, 84 Mo. App. 433; Young v. Railroad, 93 Mo. App. 267; Bowen v. Railroad, 95 Mo. 268; Henry v. Railroad, 76 Mo. 288; Haley v. Railroad, 179 Mo. 35; Railroad v. Columbia, 65 Kan. 398; Herring v. Railroad (Va.), 45 S. E. 322; Stephenson v. Corder, 71 Kan. 475. We therefore claim that as a matter of law, upon the undisputed testimony, the court should hold that there was no evidence of failure of defendant's duty to plaintiff with reference to the number of men employed in doing the work. (d) Even if the record contained any competent testimony tending to show negligence on the part of defendant, the defect was a patent one and as open to the knowledge of plaintiff as to defendant.

He was not ordered or directed to do this work in any particular way. Haviland v. Railroad, 172 Mo. 106; Railroad v. Rogers, 57 Fed. 381; Beckman v. Brewery Co., 98 Mo. App. 559; Lentz v. Chappell, 103 Mo. App. 208; Leitner v. Grieb, 104 Mo. App. 173. (e) The proximate cause of the injury was plaintiff's voluntarily taking his position between the wheels when he could, had he wished, have stood outside the danger point and pushed on the journal or that part of the axle which is outside the wheel. Smith v. Box Co., 193 Mo. 737; Hulett v. Railroad, 67 Mo. 240; Craig v. Railroad, 54 Mo. App. 527. (2) This case should be reversed on account of the admission of improper testimony offered by plaintiff, with respet to the number of men requisite to push these wheels upon the car. These witnesses were not qualified to express an opinion as to the number of men requisite to push these wheels upon the car, using a closed skid, because they admitted that they had had no experience with such skids. But, even if these witnesses were qualified, the questions were not put to them in the proper form, as hypothetical questions. Senn v. Railroad, 108 Mo. 150; Culbertson v. Railroad, 140 Mo. 60; Hurt v. Railroad, 94 Mo. 260; Turner v. Haar, 114 Mo. 335. (3) The court erred in permitting Drs. Jones and McDonald to testify as to the probability or likelihood of plaintiff's recovery. 3 Sutherland on Damages, 261; Fry v. Railroad, 45 Iowa 416; Curtis v. Railroad, 18 N. Y. 564; White v. Railroad, 61 Wis. 536. (4) Instruction 1, given in behalf of plaintiff, purports to cover the whole case, and should not have been given in that form, because it omits one defense pleaded by defendant, namely, assumption of risk. State v. Lentz, 184 Mo. 223; McMullen v. Railroad, 60 Mo. App. 231. (5) Instruction 5 was erroneous, because it did not confine the jury to the injuries set forth by the pleadings and established by the proof. It is in the nature of a roving commission to the jury to go outside of

the pleadings and the evidence in making their allowance for plaintiff's injuries. Boyd v. Railroad, 108 Mo. App. 303. (6) Defendant's instruction 10 should have been given. It has long been the law in this State that, if a servant voluntarily assumes a dangerous place, when there is a safe one open to him, the fault is his own. Smith v. Box Co., 193 Mo. 715; Hulett v. Railroad, 67 Mo. 239; Moore v. Railroad, 146 Mo. 572.

*J. C. Rieger* and *Elijah Robinson* for respondent.

(1) There was abundant evidence tending to show that defendant was negligent in that it failed to furnish a sufficient number of men to do the work with safety, and that such negligence caused the accident. If the number of men furnished was not sufficient to push the wheels up the skids, that fact necessarily made the work dangerous for the men behind the wheels. Whether there was a sufficient number of men furnished to do the work, was a question of fact to be determined by the jury. On this question there was a conflict of evidence, plaintiff's witnesses testifying that six men, two on the car and four on the ground, were required, and defendant's witnesses testifying that only four men, two on the car and two on the ground, were needed. Plaintiff's foreman knew that if the number of men engaged in loading the wheels was insufficient, that fact would make the work dangerous. (2) The insufficiency of men to do the work was not patent in the sense that plaintiff was bound to know the fact and assume the risk. (3) Plaintiff is not precluded from recovering by reason of having voluntarily selected the more dangerous of two ways of doing the work. (4) The court properly admitted the evidence on behalf of plaintiff as to the number or men required to load the wheels with safety. Kaminski v. Iron Works, 167 Mo. 466; Longan v. Weltmer, 180 Mo. 340; Goings v. Railroad, 47 Mo. App. 181; Fogus v. Railroad, 50 Mo. App. 264; Bucke-

lew v. Railroad, 107 Mo. App. 586. It was not necessary to make the questions to these witnesses any more specific.   Longan v. Weltmer, 180 Mo. 341; Howland v. Railroad, 110 Cal. 513.

WOODSON, J.—This suit was begun in the circuit court of Jackson county by the plaintiff against the defendant to recover the sum of $20,000 damages for personal injuries sustained by him through the alleged negligence of the defendant.  There were two trials had in the circuit court—the first resulted in a verdict and judgment for plaintiff for $4,000, and upon appeal to the Kansas City Court of Appeals the judgment was reversed and the cause remanded for a new trial.   The second trial resulted in a verdict in plaintiff's favor for the sum of $8,000.  At the suggestion of the trial court a *remittitur* of $3,000 was entered and judgment was then entered in his favor for the sum of $5,000.   After unsuccessfully moving for a new trial, the defendant duly appealed the cause to this court.

The facts of the case are few and are not complicated.  They are as follows:

At the time of the injury the plaintiff was about sixty-eight years of age and had been in the continuous employ of defendant for twenty-five years, whose duty it was to look after materials, castings, and get out materials for the drill press, etc., all of which was comparatively light work.  On the day of his injury he was called from his regular duties by defendant's foreman and ordered to assist in loading carwheels onto a flat car.  This was wholly outside of his ordinary duties, but he had during all the years of his employment been around and observed in a general way the manner in which the cars were generally loaded, but he had never assisted or been called upon to assist in that kind of work; he had no experience therein save and except seeing other persons perform the work,

and knew nothing of the weight of the wheels or the strength or force required to load them upon the car. Defendant had a regular gang of men to load carwheels. When plaintiff was ordered to load the wheels he and two other men started to roll the wheels along the track and up the skids, and just as they started to roll them up defendant's foreman ordered one of them to go and do other work, and left plaintiff and one Moran to handle the wheels and push them up the skids. The plaintiff and Moran pushed the wheels up the skids until, as he claims, from lack of strength they lost control of them and they started to roll back, and in his attempt to get out of the way of them he fell and was run over by one of them and thereby there were inflicted upon him the injuries complained of.

The skid or appliance with which the defendant was endeavoring to load the wheels at the time of the occurrence in question was a floored one and about fifteen feet in length. The end of the car on which the skid rested was from sixty-eight to seventy feet from the turntable, from which the wheels were rolled onto the track, to be rolled up the skids and into the car. The wheels were thirty-three inches in diameter.

The plaintiff's evidence tended to show that a run of seventy-five to one hundred feet was required to give the wheels the necessary momentum to carry them up the skid; and that the assistance of two men outside the wheels was necessary to safely get them within reach of the men on the car.

Both open and closed skids were used by the defendant, and they were exactly the same in construction except that the closed ones had a floor with cleats nailed thereto to prevent the men's feet from slipping from under them while pushing the wheels up the skid. In ascending the floored skids the axle of the wheels was so low that the men between had to stoop over to reach it; and the evidence shows that the men

pushing in this position of the wheels could not exert as much power as they could if the skid had been an open one, and they could have remained on the ground while the wheels ascended the skid. The evidence also shows that immediately before Meily was ordered to assist in this work, three men pushed the wheels up the incline.

Plaintiff was called a handy man, his duties, as stated, consisting of getting out material for men to work with, and kindred work, and defendant's foreman, Jones, testified that plaintiff would only have been called on to load carwheels in the event of being short of men and they could not get anybody else. He was a carpenter by trade but had not worked at it for years. While carpentering he acquired some knowledge of mechanics, but only in so far as the same applied to doing the work of a carpenter, and in building arch boards and braces and trucks on wheels. He knew nothing of the weight of the wheels and axles, which, it is conceded, weighed sixteen hundred pounds, or the force required to move or run them up the incline, and knew nothing of the actual size of the wheels until he made some measurements a few days before the trial, but simply knew as any one would know upon seeing them on the track. A man used to handling wheels and experienced in that work should and would know what force was necessary and the number of men required to do the work with safety.

The defendant's evidence tended to show that before the wheels reached a point where the men on the car could, with hooks, grab the axle, the plaintiff voluntarily released his hold upon the axle and ceased to push thereon, and thereby permitted the wheels to run back down the skids, and upon and over his leg, thereby causing the injuries complained of in the petition.

Defendant's evidence also tended to prove that four men, two on the car and two on the ground

or floor of the skids, were sufficient in number to load the wheels, and that plaintiff's injuries were caused by his own negligence in letting loose of and ceasing to push on the axle as it was ascending the skids.

Counsel for defendant objected to the introduction of the expert evidence regarding the number of men required to load the wheels in safety, for the reason that the loading of such wheels was not a proper subject of inquiry by expert testimony. That evidence was also objected to for the reason assigned, that the witnesses who gave it were not shown to be qualified as experts upon the subject.

At the request of plaintiff and over the objections of defendant, the court gave the following instructions to the jury, to-wit:

"1. The court instructs the jury that if you believe from the evidence in the case that the defendant failed to furnish a sufficient number of men to do, with reasonable safety, the work in which plaintiff was engaged at the time of the accident in question, taking into consideration the kind of work in which he was then engaged, and the kind of appliances which were furnished by defendant with which to do said work, and if you further believe from the evidence in the case that such failure upon the part of the defendant was negligence, within the meaning of that term, as hereinafter defined, and if you further believe from the evidence in the case that the accident occurred and plaintiff was injured by reason of such negligence, then plaintiff is entitled to recover, and it is your duty as jurors to return a verdict in his favor, provided you find that at the time of said accident he was not himself guilty of negligence which directly contributed thereto.

"By the term 'negligence' as used in these instructions is meant the failure to exercise such care and prudence as an ordinarily careful and prudent person

would exercise under the same or similar circumstances.

"2. If the jury believe from the evidence that any witness in this case has wilfully sworn falsely in any material issue in the case, then you are at liberty to reject all or any part of the testimony of such witness. The jury are the exclusive judges of the credibility of any witness testifying in this case, and it is for you to determine how much credence, if any, you will give to any witness.

"3. The court instructs the jury that they are not bound to accept the opinion of expert witnesses, but may give them such weight as they deem them entitled to; and that they may altogether disregard them, if from all the facts and circumstances in evidence they believe such opinions to be unreasonable.

"4. The court further instructs the jury that you are the sole judges of the credibility of the witnesses and of the weight of the evidence in the case, and in determining what credit should be given to the testimony of any witness or witnesses, you should take into consideration the reasonableness or unreasonableness of the statements of such witness or witnesses, together with all other facts and circumstances developed by the evidence in the case, and then decide the case according to what you may believe to be the weight of evidence.

"5. The court instructs the jury that if you find for plaintiff you will assess his damages, if any, at such sum as you may believe will fairly compensate him for the injuries he has sustained, taking into consideration his physical disabilities, if any, and the pain and suffering, if any, that he is enduring and has endured by reason of the injuries received by him in the accident in question."

Thereupon the defendant asked the court to instruct the jury as follows, to-wit:

"1.   Under the pleadings and the evidence you will return a verdict for the defendant.

"2.   The court instructs the jury that there is not sufficient evidence that defendant failed to furnish a sufficient number of men to handle and push to their destination said wheels, which plaintiff was helping push at the time he claims to have been injured, and that allegation of negligence is withdrawn from your consideration, and in making up your verdict you will not consider the same.

"3.   The court instructs the jury that there is not sufficient evidence that defendant was negligent in furnishing plaintiff a pair of skids with a floor in the same.   That allegation of negligence is withdrawn from your consideration, and in making up your verdict you will not consider the same.

"4.   Defendant was not an insurer of the safety of plaintiff while in its employ, and if the jury believe that plaintiff's injuries were merely the result of accident, then your verdict will be for the defendant.

"5.   If you believe that John E. Meily was guilty of negligence in any particular which directly contributed to his injury, then he cannot recover, and your verdict must be for the defendant.

"6.   Where one by his own negligence brings an injury upon himself there can be no recovery.   In such a case there is no relief.   It is also the law that there can be no recovery where one has been guilty of negligence that merely contributes to his injury.   If the plaintiff, John E. Meily, and the defendant were both equally guilty of negligence, then plaintiff cannot recover.   But it is not necessary that plaintiff and defendant should be equally guilty of negligence in order to prevent a recovery on the part of plaintiff herein. In order that defendant may be held liable in this case it is necessary that defendant's negligence should have been the cause of the injury to plaintiff.   Plain-

tiff, however, cannot recover if the negligence of plaintiff contributed to his injury.

"7. Plaintiff was bound to use his senses, intelligence and experience while working with or upon the skids furnished by the defendant, and if plaintiff failed to use either his senses, intelligence or experience to the extent which a person of ordinary care would have used them, under the circumstances as they existed at the time plaintiff claims to have been injured, and if such failure directly contributed to his injury then plaintiff cannot recover in this case and you must find for defendant. And this is so even though you should find that defendant was also negligent or failed in some duty that it owed to the plaintiff.

"8. If the jury believe from the evidence that plaintiff stumbled and fell over some obstacle and that but for the fact of stumbling and falling plaintiff would not have been injured, then he cannot recover in this case and your verdict must be for defendant.

"9. If plaintiff's injuries were the result of one of the usual and ordinary risks of the business in which he was engaged, then he cannot recover and your verdict must be for the defendant.

"10. If the plaintiff had a choice of two ways of avoiding the wheels as they ran down the skids, one of which was safe and the other dangerous, and he chose the dangerous way, then he assumed the risk thereof, and if you believe that his injuries were the result of such choice on his part, then he cannot recover.

"11. If you believe from the evidence that plaintiff was injured by reason of a failure on the part of his coemployees on the car to hold the wheels on the skids with their hooks, if there was such failure on their part, then there can be no recovery in this case, and your verdict must be for defendant [*provided you find from the evidence that it was reasonably*

*safe to do the work of putting the wheels onto the cars
with four men, as indicated in defendant's instruction
number seventeen which you will read and consider in
connection with this instruction*].

"12. The burden of proof in this case is upon
the plaintiff to show that he was injured by reason
of negligence on the part of the defendant as alleged
in his petition. Plaintiff alleges in his petition that
defendant was negligent in not furnishing a sufficient
number of men to handle and push the wheels onto
and upon the skids. Now, unless you believe that
plaintiff was injured by reason of negligence on de-
fendant's part as above stated, then plaintiff cannot
recover, and this is true no matter what you may think
about anything else in the case.

"13. While the plaintiff is a competent witness
to testify in his own behalf, yet the jury in determin-
ing what weight, if any, they will give his testimony
have a right to consider his interest in the result of
this suit; and what the plaintiff has testified to against
his interest, if anything, is to be taken as true, and
what he has testified to in his favor is to be given only
such weight as the jury may believe from the evidence
in the case it is entitled to.

"14. If the jury believe from the evidence that
any witness in this case has wilfully sworn falsely
in any material issue in the case, then you are at liberty
to reject all or any part of the testimony of such wit-
ness. The jurors are the exclusive judges of the cred-
ibility of any witness testifying in this case, and it
is for you to determine how much credence, if any, you
will give to any witness.

"15. If the jury believe from the greater weight
of the evidence that the plaintiff and one Mike Moran
were loading wheels into one of defendant's cars and
that they started some distance from the foot of the
skids on which the wheels were to be rolled into the
car from the track below; that they pushed said wheels

to the foot or bottom of said skids, and that plaintiff there let loose of the wheels, or stopped at the foot of the skids and allowed his co-employee alone to push the wheels on or upon the skids, and if you further believe that the said co-employee, by reason thereof, was unable to hold the wheels on or upon the skids and that the same rolled back and caught plaintiff and injured him, then plaintiff cannot recover and your verdict must be for the defendant.

"16.   If you believe from the evidence that plaintiff failed to do his part in pushing the wheels onto the skids and holding them there till they might be caught and held by the men in the car with their hooks, then he cannot recover and your verdict must be for the defendant.

"17.   Defendant was not required to use more than four men—that is, two men on the ground to roll the wheels and two men on the car to catch the wheels with their hooks so as to push or pull the wheels onto the skids and then into the car, if you believe it was reasonably safe to do said work with four men as stated.   Defendant was not required to make said work absolutely safe by using a greater number of men. All that defendant was required to do was to use reasonable care to make the work reasonably safe [*and you will read and consider in arriving at a verdict defendant's instruction number eleven.   By reasonable care is meant such care as a reasonably prudent person would usually exercise under the same or similar circumstances*].

"18.   If the jury believe from the evidence that plaintiff's injuries were the result of inexperience or want of knowledge on his part in the doing of the work which he was called upon to do, then plaintiff cannot recover and your verdict must be for defendant.

"19.   In this case defendant cannot be held liable for any want of incapacity or inability on the part of plaintiff to perform the work in question, if such inca-

pacity or inability on his part was occasioned by reason of plaintiff's advanced age. If you believe therefore that plaintiff's injuries were the result of his inability or incapacity to do work which he was required by defendant's foreman to do, and not by reason of any insufficiency of the number of men doing the work at the time he was injured, then plaintiff cannot recover and your verdict must be for the defendant.''

The court gave instructions numbered 3, 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, 18 and 19 as asked by defendant and refused instructions 1, 2, 10 and 16, and to this action, order and ruling of the court in refusing said last-named instructions, and each of them, defendant at the time excepted.

The court refused instructions 11 and 17 as asked by defendant which were asked as above set forth except without the portions shown in italics between brackets, and after adding the italicized and bracketed sentences to the instructions 11 and 17 as asked by defendant, gave them as so modified to the jury. To the action of the court in refusing the said instructions and each of them as asked and in modifying and in giving instructions 11 and 17 and each of them as modified, defendant excepted.

The following constitute the substance of the errors assigned by counsel for defendant:

1st. In not sustaining defendant's demurrer at the close of plaintiff's case.

2nd. In refusing at the conclusion of all the evidence in the case a peremptory instruction to find for defendant.

3rd. In giving instructions numbered 1, 2, 3, 4 and 5 and each of them, as requested.

4th. In refusing each of the instructions asked by defendant, being numbered 1, 2, 10, 11, 16 and 17.

5th. In admitting testimony over the objections and exceptions of the defendant, as follows:

(a)   The testimony of Dr. Jones and Dr. McDonald with respect to the probability or likelihood of a recovery on the part of plaintiff.

(b)   The testimony of Mangan, Solomon Jones and Richardson with reference to their opinion about the number of men required to load wheels, using a closed skid.

I.   It is insisted by counsel for appellant that the action of the trial court in refusing the demurrer asked at the close of respondent's evidence, and also the refusal to give a peremptory instruction, telling the jury to find for appellant, at the close of all the evidence in the cause, were reversible errors.

As both of these assignments refer to the insufficiency of the evidence to sustain the verdict of the jury, we will discuss them together.

In response to this challenge of the sufficiency of the evidence we have briefly stated the substance of all the testimony as disclosed by the record. In short, the evidence tends to show that the respondent at the time of the injury complained of was about sixty-eight years of age and had been an employee of appellant for more than twenty-five years in the capacity of custodian and distributor of bolts, castings and various other materials to be used by various employees of appellant. This was considered light work. He performed those duties in the same building in which the carwheels had been loaded for years, and had during all that time observed in a general way, as one employee would observe the work of another, the manner of and the means by which the wheels were loaded onto the cars; but he had had no practical experience whatever in the performance of that work prior to the time when called upon by the foreman of appellant to assist therein; he was ignorant of the details of the work and had no knowledge whatever of the weight of the wheels nor of the degree of strength or force requir-

ed to run them up the skids to the top of the car; he and one Moran, a fellow-employee, were ordered to load a pair of the wheels onto a flat car; in the usual and ordinary way of doing the work they stepped between the wheels and placed their hands upon and against the axle and thereby with all their strength and speed pushed and rolled them for a distance of about one hundred feet along and upon a level track to the lower end of the skid; by the momentum of the wheels thus acquired and with the united strength of respondent and Moran it was attempted by them to run the wheels up the skid to a point where two men standing on top of the car could reach down and grapple the axle by means of large iron or steel hooks, and by the combined action of all these forces they attempted to roll the wheels onto the top of the flat car; before the wheels reached a point high enough on the skid to be reached by the men on the car with the hooks, the strength of respondent and Moran became exhausted and they were unable to push them further or to hold them stationary, consequently the weight of the wheels and the laws of gravity caused them to roll back down the incline; while respondent was endeavoring to reach a place of safety he tripped and fell with his right leg across one of the rails in front of the descending wheels, and before he could extricate himself from that perilous position one of the wheels passed over and permanently injured his leg. The evidence also tended to show that it required six men to load the wheels in safety to the employees engaged therein and that four were an insufficient number to do the work; that respondent was not aware of the dangers incident to the situation, while the foreman of appellant was perfectly familiar therewith.

The function of a demurrer to the evidence is to admit as true all the facts which the evidence tends to prove as well as all the reasonable deductions which may be naturally drawn therefrom, and at the same

time defendant may maintain that there is no legal lia-
bility under the admitted facts. [Barth v. Railroad, 142
Mo. 548-9.] According to this rule, it stands admitted
that the respondent was injured while performing the
duties assigned to him by appellant's foreman, and
through the negligence of the appellant in not furnish-
ing a sufficient number of employees to safely perform
the work in which he was engaged he was run over by
a carwheel and permanently injured. Under the law
of this State, it is as much the duty of the master to
furnish a sufficient number of servants to perform the
duties assigned to them in reasonable safety as it is
to furnish them with a reasonably safe place in which
to labor. [Stoddard v. Railroad, 65 Mo. l. c. 519, 520;
Craig v. Railroad, 54 Mo. App. 526; McKeon v. Rail-
road, 43 Mo. 406.] If tested by this well-settled rule
we must hold that the court did not err in refusing the
demurrer to the evidence.

The appellant next insists that conceding it was
negligent in not furnishing a sufficient number of ser-
vants with which to load the wheels onto the car, yet
the peremptory instruction asked at the close of all
the evidence in the case should have been given for the
reason assigned by counsel, that the evidence showed
respondent was guilty of negligence in voluntarily let-
ting go of the wheels and ceasing to push on them be-
fore they reached a point on the skid where they could
be grapped by the men on the car; and by negligently
placing himself between the wheels in a place of danger
when he could have walked on the outside of the wheels
and pushed them up by pushing against the end of the
journal which extended some six or eight inches be-
yond the outer line of the wheel.

While it is true there was evidence introduced by
appellant which tended to prove respondent volun-
tarily released his hold upon the wheels and suffered
them to run back down the incline, yet there was sub-
stantial evidence to the contrary and which tended to

show respondent and Moran did not have the physical strength to push the wheels up to the desired point, but through weakness and sheer exhaustion they were forced to release their holds upon the axle and seek a place of safety.

The law is that where the testimony is conflicting upon any fact it is improper and erroneous to assume or declare as a matter of law that such fact is true or false. Where the evidence is conflicting an issue of fact is presented and it should be left under proper instructions for the jury to determine. [Crossett v. Ferrill, 209 Mo. l. c. 707.]

Counsel for appellant also insists in this connection that the peremptory instruction should have been given because the evidence shows that the respondent was guilty of contributory negligence in that there were two ways by which the work could have been performed by him—one, a safe way, by walking along on the ground on the outside of the skid and by pushing on the end of the journal; and the other, a dangerous way, by walking up on the floor of the skid and pushing against the axle, as was done by respondent in this case; and having voluntarily taken the dangerous way the court should have declared as a matter of law he could not recover, and that the verdict of the jury should have been for the appellant. That insistence as an abstract proposition states a correct principle of law, but when applied to the facts of a case, as shown by the evidence, it has many qualifications and limitations. In the case at bar the rule does not apply in the broad sense in which it is above stated, for the reason that the uncontradicted evidence shows that the floor of the skid was placed therein with cleats nailed thereon for the express purpose of having the employees use it in loading the wheels upon the cars, just in the precise manner in which respondent was using it when the injury was received. That being true, it comes of poor grace for appellant to say to respondent in one

breath, "Yes, I constructed the floor for you to walk upon in the discharge of your duties," and in the next to say to him, "You are guilty of contributory negligence in walking upon the floor so constructed for you, and which was being used by me at the very time of your injury." No court would be warranted in so holding without the evidence should also show that the way prepared by the master was so obviously dangerous that a man of ordinary sense and prudence would not use it notwithstanding the fact that it was constructed expressly for that purpose; and there is no evidence to be found in this record showing such glaring danger as would defeat respondent's action as a matter of law. Looking at the proposition in a most favorable light for appellant, it should have been left to a jury to say under the law and evidence of the case whether or not the danger was so obvious that respondent should not have used the way prepared for him. [Stoddard v. Railroad, 65 Mo. l. c. 520-1; Hamman v. Cen. Coal & Coke Co., 156 Mo. l. c. 244.]

That issue was fairly submitted to the jury and they found in favor of respondent.

We are, therefore, of the opinion that the court properly refused to give the peremptory instruction asked by appellant.

II. Appellant assails the correctness of instruction numbered one given by the court in behalf of the respondent, for the reason assigned, that while it purports to cover the whole case it omits one of the defenses pleaded in the answer, namely, assumption of risk.

We have been cited to no authority sustaining the position assumed by counsel for appellant, and we have been unable to find any case in this State lending color to that contention, excepting the case of Sullivan v. Railroad, 88 Mo. 169. In that case by a divided court (NORTON and BLACK, JJ., dissenting), it was held that an instruction which embraced all the facts which were

necessary to be found by the jury, before the plaintiff would be entitled to recover, must also tell the jury that before a recovery could be had the jury must also find that the plaintiff was not guilty of contributory negligence. But no case has been found in this State or elsewhere, going to the full extent contended for by learned counsel for appellant; nor is the doctrine announced in the Sullivan case any longer the law of this State. That case has been overruled many times in express terms by this court, among which are the following: Owens v. Railroad, 95 Mo. 169; Dougherty v. Railroad, 97 Mo. l. c. 661; Burlington Bank v. Hatch, 98 Mo. l. c. 379; Reilly v. Railroad, 94 Mo. 600; State ex rel. v. Hope, 102 Mo. l. c. 426; Burdoin v. Trenton, 116 Mo. l. c. 372; Hughes v. Railroad, 127 Mo. l. c. 452; Meadows v. Life Ins. Co., 129 Mo. l. c. 97; Anderson v. Railroad, 161 Mo. l. c. 427.

There is no reason or authority for the rule stated in the Sullivan case, except in those States where the rules of pleading require that the plaintiff after stating his cause of action must also allege in his petition that he was not guilty of any negligence which contributed to his injury. Illinois, for instance, is one of the States where such practice prevails, and, consequently, the Supreme Court of that State has logically held that where the law requires the plaintiff to deny contributory negligence in his petition he must prove and the jury must find he was guilty of no negligence which contributed to his injury before he is entitled to a recovery. That being true, it must logically follow that the instruction must submit that issue to the jury before the jury could pass upon it, and, if it failed to do so, then it would be erroneous. But no such rule of pleading or practice exists in this State, but upon the contrary, this court has repeatedly held and it is the well-settled practice in this State that contributory negligence is a matter of defense and should be pleaded in the answer, in order to be available as a defense to

plaintiff's cause of action, and that the plaintiff need not allege or prove that he was without fault at the time of the injury. [Petty v. Railroad, 88 Mo. 306; Hudson v. Railroad, 101 Mo. 13; Young v. Iron Co., 103 Mo. 324.]

We must, therefore, hold that the instruction complained of is not erroneous for the omission indicated.

III. It is next insisted by counsel for appellant that the judgment should be reversed for the reason that the court erred in the admission of improper testimony offered by plaintiff with respect to the number of men required to load the wheels on the car.

There are three objections urged against the admission of this testimony and they are as follows: First, because it was not a proper subject of inquiry by expert evidence; second, that the witnesses who testified upon that subject were not properly qualified as experts; and, third, that the questions propounded to the experts were not hypothecated upon the facts of the case as disclosed by the evidence.

We will discuss those objections in the order stated.

FIRST. Was it a proper subject for expert inquiry? The rule is that where the subject of inquiry is one upon which men of ordinary intelligence and information are not familiar with and are incapable of forming a judgment thereon, then expert evidence is admissible to explain it. This is especially true where there is a call for scientific or professional knowledge, or any particular knowledge or experience not possessed by the ordinary people or jurymen of the country. Such testimony is advisory only, and its introduction is wholly useless and improper where the triers of the facts from their own experience and knowledge of the question are fully capable of passing judgment thereon. [McCloskey v. McCloskey, 68 Mo. App. 199; Hartman v. Muehlebach, 64 Mo. App. 565; Benjamin v. Rail-

road, 50 Mo. App. 602; State v. Dusenberry, 112 Mo. 277.]

In the case at bar the question under investigation was the proper and safe way of loading carwheels upon a flat-car. Is that a matter which is within the common knowledge of mankind? We think not, and venture the assertion that there is not one man in a hundred who ever saw carwheels loaded onto cars, or knows the means by which they are loaded, their weight, the required amount of power or force to load them or the number of men required to perform that work in safety to each other. That service as a rule is performed in the car shops or on other private grounds of the railroad companies, not in the presence of or under the eye of the general public. That being true, the general public have no opportunity of seeing or knowing anything about the proper means and manner of loading such wheels, the danger attending such loading, or the number of men required to properly accomplish that work.

If we test the admissibility of the testimony in question by the rules of evidence above stated, then we are constrained to hold that the question under consideration is not one that lies within the common knowledge of mankind, but is only known and understood by those who have some special knowledge or experience regarding that branch of defendant's business. We are, therefore, clearly of the opinion that the question under consideration was a proper subject for explanation by expert testimony and that its admission was proper.

*The second* objection urged against the admission goes to the qualification of the witnesses who testified upon that subject. All of the witnesses who testified upon that branch of the case were old and experienced railroad men and had been either foremen or assistant foremen for various railroads for years, and all of them had had personal experience in and observa-

tion of loading carwheels upon cars. While the experience of one of the witnesses in that regard covered only two months, yet the experience of the other three extended over different periods of years. All of them showed they were perfectly familiar with the subject of loading carwheels onto cars by what is called the open-skid, but none of them except the witness Vaughn ever had experience in loading them with closed skids. He had used both kinds, the open and the closed. The only difference there is between the two kinds is the open ones have no floors while the closed ones have a floor.

We do not understand counsel for appellant to seriously contend that these witnesses were not qualified to testify as experts as to the proper manner of loading carwheels when the open skid is used, but insist that whatever knowledge or information they may have in that regard would not qualify or enable them to testify as experts in cases where the wheels were being loaded with a closed skid, as was the fact in the case at bar.

We are unable to lend our concurrence to that contention. The evidence shows that when the closed skid is used, as a rule, the men walk upon the floor thereof, between the wheels, with their hands resting upon and against the axle, which is only about sixteen or seventeen inches above the floor, and in that stooped position push and follow the wheels up the incline to near the top of the car, where they are grappled with hooks in the hands of men standing on the car. Occasionally the men walk along on the ground on the outside of the skid and push the wheels up by taking hold of the journal which projects some six or eight inches beyond the side line of the wheel. When the open skid is used the men usually walk upon the ground between the rails or tracks of the skid and push against the axle and follow the wheels as they roll up the incline toward the top of the car; and, occasionally, they

walk on the outside and push against the journal, as is occasionally done with the closed skid.

The evidence shows, and it is self-evident, that a man thus standing erect or nearly so is in a position to push more against the axle than he could if he was in a stooping and leaning position, as he must be in when using the closed skid when used in the ordinary or usual manner. That being true, it is equally self-evident that it would take as many, if not more, men to load the wheels with the closed as it would require to load them with the open ones. The difference in the construction of the two kinds of skids and the manner of loading with each are not so different as to call for a greater or different knowledge and experience in the one case than is required in the other. If a man knows the proper manner of loading with the one kind, then he would necessarily know the proper way to load with the other. Evidently if he knew how many men are required to load with the open, then he would also know that it would take as many or more to load with a closed. The plaintiff's evidence tended to show that it required six men to load with the open skid; and, if that is true, it must necessarily follow that it would take no less number to load with the closed skid.

*Counsel's third objection* to the admission of this evidence is stated in the following language:

"2. Even if they were qualified, an opinion from them could only be received in evidence in answer to a proper hypothetical question.

"3. The question put to them was not a proper hypothetical question because it left out of consideration many very important features of the situation, for example, the distance the wheels were started back from the skid, the absence of impeding cross pieces in the closed or floored skids; the cleats on the floor of the closed skids with which the men could brace their feet, and the presence of the two men on the car with the hooks standing ready to assist when the wheels came

within their reach. The bald question was put to them ignoring all this and making no general distinction between open and closed skids.''

It is earnestly insisted by learned counsel for appellant that expert testimony regarding matters of this character can be given only in answer to hypothetical questions put to the witness, and that such witness can give his opinion only on facts shown in evidence by others and assumed to be true as a basis for his opinion.

It has never been controverted that the opinion of expert witnesses must be based upon the facts of the case as shown to exist by the other evidence in the case, but there has been some contrariety of opinion as to how the facts of the case should be presented to the mind of the witness upon which to base his opinion. But long ago the courts and text-writers of this country have said that it may be done in two ways: first, by propounding hypothetical questions embracing all the facts of the case which the evidence of either party to the case tends to prove—the question must assume that those facts are true, and upon the assumed facts the witness must base his answer; and, second, in certain classes of cases, as in the application of mechanical appliances, where the evidence of the case shows the character of the appliances used and that the witnesses are familiar with those appliances, and that they know from their own knowledge and experience the proper and safe way of operating them, then the overwhelming weight of authority is to the effect that a general question may be asked regarding the proper and safe way to operate them, the question assuming without so stating that the witness has the knowledge and experience regarding the matters which the evidence tends to show he possesses. [Kaminski v. Tudor Iron Works, 167 Mo. l. c. 466; Longan v. Weltmer, 180 Mo. l. c. 340.]

In the case at bar the evidence showed the character of the cars upon which the wheels were to be loaded, the character, size and weight of the wheels to be loaded, the general character, construction and length of the skids used, and that the witnesses who testified as experts were shown to have been old, experienced railroad men and thoroughly familiar with the way such loading was and should have been done and the number of men required to properly and safely do that work.

We are, therefore, clearly of the opinion that the action of the court in admitting the expert testimony was proper.

IV.    The action of the court in admitting the testimony of Doctors Jones and McDonald regarding the probability or likelihood of respondent's recovery is also assigned as error.

Their evidence against which the objection is lodged is as follows:

The testimony of Dr. Jones:

"Q.    I will ask you, Doctor, what would finally be the result of this injury, the probable result?

"Mr. Black:    We object to that as speculative; it is not based on the probable statement of facts.

"The Court:    If he knows what the result would be he can state it.

"To which ruling defendant excepted.

"A.    I said he had inflammation of the hip joint in my opening statement.

"Mr. Black:    Of course, we wish the record to show we except to your honor's ruling.

"A.    (Continued) That is what we call hip joint disease.

"Q.    That is the reason I asked the question. What is likely to be the result of the injury he has received that you examined him for—the probable result?

"Mr. Black:    We object to that as speculative.

"Q. Will he ever get well in your opinion, as a medical expert?

"Mr. Black: We object to that for the same reason.

"The Court: Cut out the word probable.

"To which action and ruling of the court defendant at the time excepted and does now except.

"Q. What would be the probable result? A. Well, the reasonable or logical result—I suppose it means the same thing—would be an increase of the trouble, there would be absorption, continual absorption of the end of the thigh bone. The filling up of the socket that it works in, it works in a socket something like that (indicating) and the conditions are progressive.

"Q. What do you mean by the conditions being progressive—for better or for worse? A. I mean for worse."

Testimony of Dr. McDonald:

"Q. You say this injury when you examined him last was worse than it was before? A. Yes, sir.

"Q. It is gradually growing worse? A. Yes, sir, gradually getting worse.

"Q. I believe you said that you thought it would finally result in the total loss of the use of the leg?

"Mr. Black: We object to that as speculative.

"Q. What is likely to be the result from the injury to his leg?

"Mr. Black: We make the same objection.

"Objection by the court overruled. Defendant excepted.

"A. I think it will keep getting worse all the time."

"Re-Cross Examination: Q. That is your opinion in regard to the leg? A. Yes, sir.

"That is all."

If we correctly understand the contention of counsel for appellant regarding this evidence it is this—

that it relates to conjectural suffering to be endured by the respondent in the future and is not confined to that which the evidence tends to show he is reasonably certain to undergo in the future.

There can be no question but what the damages of respondent must be limited to the physical pain and mental anguish he is reasonably certain to suffer in the future as a result of the injury, but we do not concur in that view of this evidence. The doctors were testifying as to the permanency of his injuries, and the effect of their testimony was that respondent would continue to grow worse and that the probabilities were that his injuries would be permanent.

That evidence was clearly admissible as bearing upon the measure of damages. [Sotebier v. Railroad, 203 Mo. l. c. 716.]

V. Appellant complains of instruction numbered five given on behalf of respondent, for the reason assigned, that it did not confine the jury to the injuries set forth in the pleadings and established by the evidence, but authorized them to go outside of the pleadings and the evidence in fixing the amount of respondent's damages. That instruction in effect told the jury that in assessing the plaintiff's damages they should allow him such sum as they believed would fairly compensate him for the injuries sustained, taking into consideration his physical disabilities, if any, and the pain and anguish suffered, if any, caused by the accident in question. This instruction is not open to the criticism lodged against it. The instruction in express terms limits the recovery to the injuries caused by the "accident in question." What was the "accident in question?" Clearly, the one stated in the petition and described by the evidence; and there being no evidence of any other injury sustained by respondent, we are unable to see in what manner the jury was or could have been misled or authorized to com-

pensate him for any other injuries than those stated in the pleadings and established by the proofs.

VI. The court refused instruction numbered ten asked by the appellant, and that refusal is assigned as error. It in substance told the jury that if the plaintiff had a choice of two ways of avoiding the wheels as they ran down the skids, one of which was safe and the other dangerous, and he chose the dangerous way, then he could not recover. There are many valid reasons why that instruction should not have been given in this case, a few of which have been discussed in the first paragraph of this opinion in our discussion of the demurrer offered to the plaintiff's evidence, and as what we there said has equal application to this instruction, no useful purpose would be served by a further discussion of the matter.

VII. It is next insisted that appellant's refused instruction numbered sixteen should have been given. That instruction is as follows: "If you believe from the evidence that the plaintiff failed to do his part in pushing the wheels on the skids and holding them there till they might be caught and held by the men in the car with their hooks," then he could not recover.

This instruction was clearly erroneous and would have been misleading to the jury had it been given, for the reason that there is not a scintilla of evidence contained in this record which tends to show what was his part of the work, nor which tended to show that he was physically able to hold the wheels in position until the men on the car could grapple them with the hooks. In the absence of that evidence any conclusion which might have been reached by the jury would have been the merest conjecture and the wildest speculation. If we are to conjecture what part of the "pushing" should have been done by him from the number of men required to perform that work, then we are still left in the dark as to what part of it he

should have done, for the reason that his evidence tended to show four men were required while that of appellant tended to prove only two were necessary. If four were required, and the evidence had shown that all of them were of equal strength, then they might have conjectured with a greater degree of certainty that the respondent's "part in pushing" was one-fourth part of the entire force required to push the wheels up the skids; but then again there is and could be no evidence of the strength of the four men because there were but two there; nor does the instruction tell the jury to find the strength of the men or the number thereof which were necessary to do the work in safety. The action of the court in refusing that instruction was clearly proper.

We have carefully considered all the errors assigned, and have reached the conclusion that all of them are devoid of merit. We are, therefore, of the opinion that the judgment should be affirmed.

It is so ordered. All concur.